## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **LORA RAE SEAMON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Case No. 2:05-cv-486-wkw** |
| | * | |
| **ALABAMA FAMILY PRACTICE,** | * | |
| **P.C.,** | * | |
| | * | |
| **Defendant.** | * | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
## ALABAMA FAMILY PRACTICE, P.C.

COMES NOW, the Defendant, Alabama Family Practice, P.C., and moves the Court to enter summary judgment on its behalf pursuant to Rule 56 of the Federal Rules of Civil Procedure. As grounds for this motion, AFP would show unto the Court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. AFP's Motion is supported by the following:

1.    All pleadings filed of record.

2.    The Deposition of Kathy Lindsey, D.O., and the exhibits thereto which are filed herewith as Exhibit 1.

3.    The Deposition of Sharon Hayes and the exhibits thereto which are filed herewith as Exhibit 2.

4.    The Deposition of Lora Rae Seamon and the exhibits thereto which are filed herewith as Exhibit 3.

5.    The Affidavit of Kathy Lindsey, D.O., and the exhibits thereto which are filed herewith as Exhibit 4.

WHEREFORE, Defendant Alabama Family Practice, P.C. respectfully moves this Court to enter an Order granting this Motion for Summary Judgment and dismissing the Plaintiff's claims with prejudice.

/s/ Ben C. Wilson (asb-1649-i54b)
Mike Brock
Ben C. Wilson
Bethany L. Bolger
Attorneys for Defendant
Alabama Family Practice, P.C.

OF COUNSEL:

**RUSHTON, STAKELY, JOHNSTON
  & GARRETT, P. A.**
Post Office Box 270
Montgomery, Alabama 36067
334/834-8480

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jay Lewis, Esq.
K. Anderson Nelms, Esq.
Law Offices of Jay Lewis
P.O. Box 5059
Montgomery, Alabama 36103
j-lewis@jaylewislaw.com
andynelms@jaylewislaw.com
nelmsandy@hotmail.com

/s/ Ben C. Wilson (asb-1649-i54b)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LORA RAE SEAMON,            *
                                          *
        Plaintiff,             *
                                          *
v.                                      *      Case No. 2:05-cv-486-wkw
                                          *
ALABAMA FAMILY PRACTICE,       *
P.C.,                               *
                                          *
        Defendant.           *

NARRATIVE STATEMENT OF UNDISPUTED FACT AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT ALABAMA FAMILY PRACTICE, P.C.

COMES NOW, the Defendant, Alabama Family Practice, P.C., ("AFP") and files the

following narrative statement of facts and memorandum of law in support of its Motion for

Summary Judgment, which is filed contemporaneously herewith:

I.      NARRATIVE STATEMENT OF UNDISPUTED MATERIAL FACT

AFP is a family practice medical clinic in Montgomery, Alabama. [Exh. 1, 9:1-9:7;

17:16-17:21.] It is a professional corporation that began operating in May 1996. [*Id.*, 10:17-

10:22.] It is owned by its three shareholder-physicians, Drs. Mark and Kathy Lindsey and Dr.

Ryan McWhorter. [*Id.*, 9:8-9:21.] Dr. Kathy Lindsey is the primary shareholder and the office

manager. [*Id.*; 15:8-15:11.] Plaintiff applied for a file clerk position with AFP in 2004. [Exh. 3,

18:8-20:6.] On Friday, December 3, 2004, she was interviewed for the position by Sharon Hayes

and Dr. Kathy Lindsey. [Exh. 1, 31:1-31:16; Exh. 2, 8:9-9:15; Exh. 3, 27:9-27:22; 51:1-51:7.]

Plaintiff was approximately eight months pregnant in December 2004. [Exh. 3, 21:22-22:2.]

The subject of Plaintiff's pregnancy did not come up during the interview.[1]  [Exh. 1, 33:1-33:16.]
Among the job requirements for an AFP file clerk are to pull medical charts, file medical charts,
prepare new charts, take charts to the doctors, sort the daily mail, and prepare mail for mailing.
[Exh. 2, 23:15-24:8.]  These requirements were in place as early as 2000, well before Plaintiff
interviewed for the position.  [Job Description, attached as Exhibit 2 to Lindsey deposition.]

Plaintiff reported for her first day of work on December 6, 2004, around 8 a.m.  [Exh. 1,
27:4-27:20; Exh. 2, 12:10-12:21; Exh. 3, 27:9-27:22; 59:21-60:2.]  She filled out employment-
related paperwork in the morning and then began placing documents in patients' files.  [Exh. 3,
60:7-60:18; 62:1-65:21.]  Around noon, she went to lunch with the part-time file clerk, Kristen
Thomas.  [*Id.*, 66:10-66:20.]  Plaintiff testified that the two of them discussed her pregnancy,
among other things.  [*Id.*, 66:21-67:9.]  Hayes testified that she was approached by Thomas after
lunch, at which point Thomas stated that Plaintiff was complaining of stomach pains.  [Exh. 2,
41:2-41:10; 44:6-44:10.]  Specifically, Hayes testified that Thomas had told her that "when
[Plaintiff] would bend down to put a chart back into the shelf, that she would grab her stomach
and it was hurting her and that if her water broke to take her to the hospital."[2]  [*Id.*]  Hayes
relayed this conversation to Dr. Kathy Lindsey.  [Exh. 1, 29:18-30:16; 57:4-57:21; Exh. 2, 45:3-
45:19.]

It is undisputed that, shortly after lunch, Hayes approached Plaintiff and told her that Dr.
Kathy Lindsey wanted to speak with the Plaintiff.  [Exh. 2, 45:20-47:15; Exh. 3, 72:2-72:15.]
The Plaintiff then accompanied Hayes to Dr. Kathy Lindsey's office.  [*Id.*; Exh. 3, 72:21-72:23.]
During this meeting, Plaintiff admitted to Dr. Kathy Lindsey that she was pregnant.  [Exh. 3,

---

[1] Both Hayes and Dr. Kathy Lindsey testified that they did not know during the interview that Plaintiff was
pregnant, although Plaintiff testified that she was "huge." [Exh. 1, 30:17-30:19; Exh. 2, 13:16-13:19; Exh. 3, 43:19-
44:19.] It is undisputed that Plaintiff wore a jacket during the interview. [Exh. 3, 42:20-43:7.]

[2] Plaintiff disputes the substance of this testimony. [Exh. 3, 68:5-71:4.]

73:1-73:10.] This was the first time that Plaintiff told Dr. Kathy Lindsey or Hayes that she was pregnant. [Exh. 1, 30:6-30:19; Exh. 2, 43:14-43:16; 51:5-51:13; Exh. 3, 79:18-80:23.] Although other aspects of what was said during that meeting are in dispute, it is undisputed that Plaintiff's ability (or lack thereof) to perform her job duties was discussed. [Exh. 1, 28:20-29:17; Exh. 2, 48:1-52:19; Exh. 3, 73:1-74:6.] After the meeting, Plaintiff left AFP. [Exh. 1, 28:20-29:17; Exh. 2, 48:1-52:19; Exh. 3, 81:1-81:11.] She worked as an AFP employee for less than eight hours. [Exh. 1, 27:4-27:20; Exh. 3, 94:15-94:17.] Before leaving, she signed a statement that read:

> LORA SEAMON – EFFECTIVE 12/6/2004   LORA DID NOT DISCLOSE TO US THAT SHE WAS 8 MONTHS PREGNANT AND WE FILL [sic] THE JOB DUTIES THAT SHE WAS HIRED FOR WILL PUT HER AT RISK. THIS JOB REQUIRES HEAVY LIFTING AND CLIMBING STAIRS AND WILL PUT A STRAIN ON HER.
>
> SIGNING        BELOW        ACKNOWLEDGES        THE NONDISCLOSURE.

[Exh. 3, 78:10-79:17; Exit Disclosure, attached as Exhibit 2 to Seamon deposition.]

Plaintiff's only day of employment was December 6, 2004. [Exh. 1, 27:4-27:20.] She was compensated for her brief employment. [Exh. 3, 94:18-95:5.] On or about December 12, 2004, Plaintiff filed a discrimination claim against AFP with the Equal Employment Opportunity Commission ("EEOC"). [Complaint.] Plaintiff filed this suit, making substantially similar allegations, on May 23, 2005. [*Id.*] Plaintiff received a right to sue letter from the EEOC on or about June 24, 2005. [Amended Complaint, Doc. 10.] In her Complaint, Plaintiff alleges damages under the Pregnancy Discrimination Act, 42 U.S.C. §2000(e)(k) (the "Act").

## II.    STANDARD OF REVIEW

Summary judgment is proper if the record evinces that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  The mere existence of some alleged factual dispute between the parties is insufficient. *Lofton v. Secretary of Dept. of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004).  Instead, only factual disputes that are material under the substantive law governing the case preclude entry of summary judgment. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242 (11th Cir. 2003).  A fact is material only if it is one that might affect the outcome of the case. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

When a court considers entry of summary judgment, it views the evidence in the light most favorable to the non-moving party. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004).  The non-moving party may not, however, rely on mere allegations or denials, but must establish specific facts showing that there is a genuine issue for trial. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).  A dispute is genuine if evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1237 (11th Cir. 2004).  Viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could return a verdict in her favor.

## III.    MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

### A.    AFP IS NOT SUBJECT TO THE PREGNANCY DISCRIMINATION ACT

AFP is not subject to the Act because it does not have enough employees to fall within the purview of Title VII. *See Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) ("The analysis required for a pregnancy discrimination claim is the same type of analysis used in

other Title VII sex discrimination suits"), *citing Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308,

1312-13 (11th Cir.1994). In order to be a "covered employer" under Title VII, AFP must have

had 15 or more employees for each working day in each of 20 or more calendar weeks in the

current or preceding calendar year. That is, Title VII defines an "employer," in pertinent part, as

follows:

> The term "employer" means a person engaged in an industry
> affecting commerce who has fifteen or more employees for each
> working day in each of twenty or more calendar weeks in the
> current or preceding calendar year, and any agent of such a
> person...

42 U.S.C. §2000e(b); *see also Arbaugh v. Y & H Corp.*, 163 L. Ed. 2d 1097, 1111 (2006)

(holding that "the threshold number of employees for application of Title VII is an element of a

plaintiff's claim for relief, not a jurisdictional issue").

The U.S. Supreme Court has stated that the number of employees should be determined

by the "payroll method." *See Walters v. Metro. Educ. Enters.*, 519 U.S. 202 (1997) (discussing a

division among the circuits and adopting the payroll method); *see also McLeod v. City of

Newton*, 931 F. Supp. 817, 821 (M.D. Ala. 1996) (concluding that "an employee must be on the

payroll for each working day of the week in order to count towards the fifteen required").

Under this method, both full-time and part-time employees generally count toward the numerical

requirement. *See id.* However, "employees who are hired, fired or quit midweek are not counted

for that week." *McLeod*, *supra*, 931 F. Supp at 821. Moreover, Plaintiff has the burden of

proving that AFP had the requisite number of employees during the statutory time period. *See

id.* at 822.

Excluding the three physician shareholders, AFP employed less than 15 employees at all

times during the calendar years 2003 and 2004 except for the first bi-weekly pay period of June

2003 (during which it had 16 employees), the second bi-weekly pay period of June 2003 (15), both bi-weekly pay periods in July of 2003 (16), and the first bi-weekly pay period of January 2004 (15). [Affidavit of Kathy Lindsey, D.O., at ¶ 9, attached to Motion as Exhibit 4.]  AFP employed between 10 and 14 employees (again excluding the three physician shareholders) at all other times during the calendar years 2003 and 2004. *See id.*  Thus, setting aside shareholder-physicians, it is undisputed that AFP employed 15 or more employees for a total of approximately 10 weeks during the years 2003-04, a substantially shorter period that the twenty or more weeks required by the statute.

Whether a shareholder-director is considered an employee depends on a number of factors.  The U.S. Supreme Court has stated that there is no "shorthand formula or magic phrase" in making this determination, but it did recommend using several factors adopted by the EEOC:

> According to the Equal Employment Opportunity Commission, each of the following six factors is relevant to the inquiry whether a shareholder-director is an employee: Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; whether and, if so, to what extent the organization supervises the individual's work; whether the individual reports to someone higher in the organization; whether and, if so, to what extent the individual is able to influence the organization; whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; whether the individual shares in the profits, losses, and liabilities of the organization.

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 449-50 (2003) (holding that shareholder-physicians of a medical clinic in Oregon were not employees and thus plaintiff could not pursue her discrimination claims against it).

In *Saxon v. Thompson Orthodontics*, the U.S. District Court for the District of Kansas granted summary judgment in favor of the defendant-orthodontic firm after finding that the firm did not meet the Title VII definition of employer.  *See* 71 F. Supp. 2d 1085, 1088-90 (D. Kan.

1999).    The *Saxon* court based its holding on affidavits demonstrating that "the doctor/shareholders were compensated based on profits, shared responsibility for firm debts, participated in management decisions and set firm policy."  *Id.*; *see Owens v. Southern Dev. Council, Inc.*, 59 F. Supp. 2d 1210, 1214 (M.D. Ala. 1999) (finding that defendant-directors were not employees under Title VII and stating that, "for an individual to be an 'employee' under Title VII, the 'payroll method' and the traditional agency-law definition of 'employee' must be satisfied") (citations omitted).

In December 2004 (and currently) there were three shareholders in Alabama Family Practice, P.C.: Kathy Lindsey, D.O., Mark Lindsey, D.O., and Ryan McWhorter, M.D. Throughout 2004, each physician-shareholder owned one-third of the shares of AFP, and that remains the case today.  [Exh. 4 at ¶ 3.]

Although each of the three physician shareholders has an employment contract with AFP (true and correct copies of which are attached to Dr. Lindsey's affidavit as Exhibit 1-3),[3] each of the three physician shareholders is an equal owner and manager of AFP.  [*Id.* at ¶ 4.]  Each physician shareholder possesses broad control over the daily operations of AFP.  [*Id.*]  Each physician shareholder routinely assigns tasks to, and supervises the performance of, all AFP employees.    [*Id.*]    Each physician shareholder can hire and fire AFP employees upon consultation with the other shareholders.  [*Id.* at ¶ 5.]

Other than obligations concerning maintenance for patient charts and records and "on call" availability, which are equally applicable to all three physician shareholders, AFP does not control the day-to-day practices of the physician shareholders, and none of the physician

---

[3] The Supreme Court stated in *Clackamas* that "the mere existence of a document styled 'employment agreement' [does not] lead inexorably to the conclusion that either party is an employee."  *Clackamas, supra,* 538 U.S. at 450.

shareholders reports to anyone "higher" in the organization. [*Id.* at ¶ 6.] None of the physician shareholders can be terminated or ousted from AFP at will. [*Id.* at ¶ 7.]

Each of the physician shareholders maintains personal professional liability coverage, and each physician shareholder is personally liable in the event of a claim of that nature. [*Id.* at ¶8.] Costs associated with each physician shareholder's practice overhead, portion of mortgage payments, professional liability coverage, licensure and credentialing fees, health insurance, and salary are deducted from any bonus compensation calculation applicable to the physician. [*Id.*] Each physician shareholder pays his or her personal nursing assistant (an AFP employee) out of his or her own salary. [*Id.*] Physician shareholder salaries are set by all three shareholders during an annual meeting. [*Id.*] Each physician shareholder shares in all profits, losses, and liabilities of AFP, and each participates in any decision on the distribution of profits and losses. [*Id.*] Based on case precedent, including the Supreme Court decision in *Clackamas*, Drs. Mark and Kathy Lindsey and Dr. McWhorter are not "employees" of AFP under Title VII and thus are not counted toward the numerical requirement for employers. The employees to be properly considered in meeting the numerical requirement are the office staff members and nurses.

Therefore, the undisputed evidence is that AFP did not employ fifteen or more employees during twenty weeks contained in the calendar year in question (2004) and the preceding year (2003). [Exh. 4 at ¶ 9.] Consequently, AFP did not have the minimum number of employees required by Title VII, and Plaintiff has failed to meet this element of her claim. Defendant AFP is entitled to judgment as a matter of law.

**B.    ASSUMING AFP TERMINATED PLAINTIFF, IT HAD A LEGITIMATE, NON-DISCRIMINATORY REASON FOR DOING SO**

Alternatively, if the Court does find that AFP is subject to the Act, AFP submits that it had a legitimate, non-discriminatory reason for terminating the Plaintiff.[4]  The position for which Plaintiff applied requires the employee to lift and carry various objects, e.g., large files. [Exh. 2, 27:23-28:12; 29:5-29:10; 34:6-34:12; 35:10-35:20; 36:6-36:14; 38:23-39:7.]  AFP believed Plaintiff was medically prohibited by her obstetrician from lifting heavy items. [Exh. 1, 62:3-62:12; Exh. 2, 49:8-49:22; 51:14-52:6.][5]  That restriction, along with Plaintiff's failure to disclose her eight-month pregnancy during the interview, was the reason for Plaintiff's termination.

The file clerk position at AFP requires, among other things, the filing of patient charts. AFP has more than 12,000 patients.  [Exh. 1, 17:6-17:15.]  The file clerk must lift and carry numerous charts around the clinic throughout the day.  These charts can be both heavy and cumbersome.  As Dr. Kathy Lindsey testified:

> Q. However, there is some lifting involved in filing patient charts?
> A. Right.
> Q. Describe for me what – what lifting would be involved in filing patient charts.
> A. When you pick up, retrieve, or take the charts to the physician, you pick up a stack about this high (indicating).
> Q. And you're putting your arms or hands apart about how many inches, would you say?
> A. I don't have a ruler.  I'm sorry.
>              MR. WILSON: Twelve to sixteen inches.
> A. I mean, when I carry them, they're, like, to here (indicating).
> Q. From you waist to your mid chest?
> A. Uh-huh.

---

[4] It is disputed whether AFP terminated Plaintiff or whether Dr. Kathy Lindsey and Plaintiff mutually agreed that Plaintiff would be unable to perform her duties. [Exh. 1, 27:21-29:17; 62:13-63:3; Exh. 2, 50:4-50:22; Exh. 3, 75:8-75:22; 77:3-77:7.]  Plaintiff must prove, as part of her claim, that she was terminated.  *See Armstrong v. Flowers Hosp.*, 812 F. Supp. 1183, 1189 (M.D. Ala. 1993).  However, for summary judgment purposes, all facts must be viewed in a light most favorable to Plaintiff.  For that reason only, this portion of the brief will assume that AFP terminated Plaintiff.

[5] Plaintiff disputes that she was under any lifting restrictions.  [Exh. 3, 26:11-26:21.]

> Q. Okay. And how much would such charts weigh?
> A. Ten to fifteen pounds.
> Q. And how regular would the requirement that such lifting be done on a daily basis?
> A. Multiple times throughout the day. ...

[*Id.*, 20:15-21:13.]

Dr. Kathy Lindsey is certain that the average weight of a stack of charts is between 10 and 15 pounds because, after meeting with Plaintiff on December 6, she weighed several charts. [*Id.*, 68:2-69:20.] Dr. Kathy Lindsey testified that she wanted to be sure that she was giving Plaintiff the correct information when she stated that a 5-pound lifting restriction would limit her ability to perform her duties. [*Id.*] The file clerk is also required to sort through the mail on a daily basis. The average volume of mail for AFP is a stack about a foot high. [*Id.*, 25:17-26:19.]

Moreover, AFP has employed pregnant women on several occasions. None of these women, however, worked as a file clerk. For example, Robin Harper works as a check-out clerk at AFP and has been pregnant during her employment. [*Id.*, 38:21-39:12.] This position does not require heavy lifting or even standing. [*Id.*] The check-out clerk sits in front of a computer and enters data. [*Id.*] Stephanie Treywick has been pregnant twice during her employment with AFP. [*Id.*, 57:22-58:21.] During her first pregnancy, she worked as a check-out clerk. [*Id.*] During her second pregnancy, she worked as an office assistant. [*Id.*] Shauna Wilson is another employee who has been pregnant during her employment with AFP. [*Id.*, 58:22-59:8.] She worked as a check-out clerk during her pregnancy. [*Id.*] Latricia Lewis also was pregnant during her employment with AFP. [*Id.*, 59:9-60:7.] During her pregnancy, she worked as a nurse. [*Id.*] Her responsibilities included escorting patients around the clinic, weighing patients, taking vital signs, retrieving and answering messages, and assisting the doctor. [*Id.*]

According to the Exit Disclosure statement signed by Plaintiff, AFP did not know when it hired her that Plaintiff was eight months pregnant. On Plaintiff's first day of employment, AFP determined that Plaintiff would not be able to perform her job duties. Based on these factors, AFP terminated Plaintiff. Plaintiff will likely argue that the more strenuous requirements of a file clerk could have been alleviated, e.g., by using a cart to carry the patients' charts. However, "the Pregnancy Discrimination Act of 1978 does not require the employer to make accommodations to pregnant employees which amount to preferential treatment." *Armstrong*, *supra*, 812 F. Supp. at 1192. Thus, although federal law prohibits the termination of employees due to pregnancy, it does not completely prohibit the termination of all pregnant employees.

Plaintiff contends that AFP's reasons for terminating her are "pretextual." In order to succeed on her claims, Plaintiff must prove that AFP's reasons were a pretext for discrimination and that the true reason was intentional discrimination. As stated by the Southern District of Alabama:

> To prevail under a "pretextual disparate treatment" theory, plaintiff must establish a prima facie case of disparate treatment. Defendant then may articulate a legitimate, nondiscriminatory reason for its action. Plaintiff then has the burden of proving, by a preponderance of the evidence, that the articulated reason was a pretext for discrimination and that the true reason was intentional discrimination. The burden of proof remains on the plaintiff at all times. The controlling factual inquiry in a Title VII disparate treatment case is whether the employer intentionally discriminated against the employee, treating him or her less favorably than others because of his or her race or sex....Any legitimate, nondiscriminatory reason offered by a defendant in a Title VII case is sufficient to rebut completely a prima facie inference of disparate treatment.

*Ahmad v. Loyal American Life Ins. Co.*, 767 F. Supp. 1114, 1118 (S.D. Ala. 1991) (citations omitted). In *Ahmad*, the court found that the defendant's proffered reasons for withdrawing its offer of employment after the plaintiff revealed that she was four months pregnant were not

pretextual: that the leave of absence that the plaintiff would take so early in her career with the defendant would affect her "learning curve" and her "value to the company." *See id.*; *see also Page v. Chandonnet*, 51 Fair Empl. Prac. Cas. (BNA) 764 (D. Md. 1989) (finding that employer's reason for termination was not pretextual and noting that plaintiff failed to disclose her pregnancy during her interview).

In an Eleventh Circuit case, the plaintiff was terminated after a lifting restriction, issued by her physician due to her pregnancy, prevented her from performing all of her job duties. *See Spivey v. Beverly Enters.*, 196 F.3d 1309, 1311 (11th Cir. 1999). The Court affirmed summary judgment in favor of the defendant after finding that the plaintiff failed to establish that the defendant's policy, which allowed for light-duty assignment for employees who were injured on the job but not for other employees, violated the Act. *See id.* at 1312-13. The benefits of the policy were denied to all employees who were not injured on the job, not just to those who were pregnant. *See id.* Moreover, AFP did not impose the lifting requirements for file clerks after discovering Plaintiff's pregnancy; those requirements had been in place since at least 2000. *See Tamimi v. Howard Johnson Co.*, 807 F.2d 1550 (11th Cir. 1987) (finding that employer's reason for termination was pretextual because it instituted a policy requiring that employees wear makeup only after discovering that plaintiff was pregnant, knowing that she was the only employee who did not already wear makeup).

AFP had a legitimate, nondiscriminatory reason for its action. Plaintiff's claims are due to be dismissed, and AFP is entitled to judgment as a matter of law.

## C.    PLAINTIFF HAS NOT SUFFERED ANY DAMAGES

Finally, even if this Court were to conclude that AFP is subject to Title VII and that AFP acted in violation of the Act, Plaintiff cannot show that she has suffered any damages as a result

of AFP's actions. In fact, soon after giving birth, Plaintiff was employed by another medical facility at a higher rate of pay and with employee benefits.

As a file clerk at AFP, Plaintiff was hired at a rate of $7.00 an hour. [Exh. 1, 38:2-38:4.] She started out as a 30-day temporary employee. [*Id.*, 51:1-51:21; Exh. 2, 21:16-22:5.] She would have been eligible for health insurance and a "Christmas club" benefit after the expiration of her 90-day probationary period. [Exh. 1, 42:4-44:1; Exh. 2, 18:5-21:9.] She would have been eligible for paid holidays and some vacation and sick days after six months of employment. [*Id.*]

Plaintiff is currently employed at Baptist Medical Center. [Exh. 3, 10:21-12:17.] She has been employed there, on a full-time basis, since March 1, 2005. [*Id.*] She started at her current rate of pay, which is $8.09 an hour. [*Id.*] Her benefits include health insurance, dental insurance, retirement benefits, sick days, and vacation days. [*Id.*] She has had these benefits since her first day of employment. [*Id.*]

Plaintiff states that her damages arise out of her embarrassment when she had to rely on her parents for financial support because she "thought [she] was going to be able to take care of [her] baby on her own." [*Id.*, 89:4-90:19.][6] Plaintiff's child was born January 7, 2005, and Plaintiff admits that, by March 2005, she had her current job at Baptist Medical Center, at a higher rate of pay than AFP. [*Id.*] Plaintiff did not apply for any other jobs between the date of delivery and applying with Baptist Medical Center. [*Id.*, 106:2-106:20.]

## IV.    CONCLUSION

This issues presented in this motion are pure questions of law which are ripe for resolution. Defendant Alabama Family Practice, P.C., has shown that no genuine issues of material fact exist, and Plaintiff's claims are deficient as a matter of law and due to be dismissed. Defendant AFP is entitled to judgment as a matter of law.

---

[6] Plaintiff was living with her parents at this time, and she currently lives with her parents. [Exh. 3, 106:21-108:16.]

For these reasons, Defendant Alabama Family Practice, P.C., respectfully requests that this Court grant its Motion for Summary Judgment.

>/s/ Ben C. Wilson (asb-1649-i54b)
>Mike Brock
>Ben C. Wilson
>Bethany L. Bolger
>Attorneys for Defendant
>Alabama Family Practice, P.C.

OF COUNSEL:
**RUSHTON, STAKELY, JOHNSTON
& GARRETT, P. A.**
Post Office Box 270
Montgomery, Alabama 36067
334/834-8480

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jay Lewis, Esq.
K. Anderson Nelms, Esq.
Law Offices of Jay Lewis
P.O. Box 5059
Montgomery, Alabama 36103
j-lewis@jaylewislaw.com
andynelms@jaylewislaw.com
nelmsandy@hotmail.com

>/s/ Ben C. Wilson (asb-1649-i54b)